IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



| UNITED STATES OF AMERICA, | CR 14-125-BLG-SPW-2 |
|---|---|
| Plaintiff, | |
| vs. | ORDER AND OPINION |
| LORINDA JANE BROWN, | |
| Defendant. | |

Defendant Lorinda Jane Brown is charged with possession of stolen firearms. She has moved to suppress the evidence that forms the basis of Count II of the Indictment. (Doc. 41). The Court held evidentiary hearings on Brown's motion on April 22, 2015, and May 15, 2015. The Court heard from Montana State Adult Probation and Parole Officers Steve Peek and John Frost, and Task Force Officer Steve Feuerstein. Having read and reviewed the parties' submissions and the applicable law, and having heard the testimony of the witnesses noted above, the Court GRANTS Brown's motion.

I.   **Background**

In March 2014, 39 year old Lorinda Brown lived with her boyfriend, Ryan Cislo, and her mother, Connie Johnson, on Rainier Street in Billings, Montana. Cislo and Brown shared a bedroom. Later that month, or early the next month,

1

Cislo was arrested for a probation violation and went to jail. While Cislo was in jail, Johnson purchased and moved into a different mobile home on Attica Street North in Billings. Brown moved Cislo's clothing and personal effects to Johnson's Attica Street North residence. When Cislo got out of jail on May 7, 2014, he moved in to Johnson's Attica Street North residence. He and Brown shared a bedroom and his clothing and personal effects were located there. He had no other residence.

On June 8, 2014, Cislo showed Johnson three handguns and a rifle. He told her he was "happy" to be able to go out and shoot them. Scared, Johnson called the police the next day and asked them to search Cislo's belongings. The police refused to search the premises because neither Brown nor Cislo were present to consent and no search warrant had been issued.

At the police's suggestion, Johnson called Cislo's probation officer, Steven Peek of Montana State Probation and Parole. She told Peek that Cislo was in a relationship with her daughter, Brown, and had been living in Johnson's mobile home on Attica Street North since he was released from jail on May 7, 2014. Johnson told Peek that Cislo had recently shown her three handguns and a rifle and she was concerned that he was involved in drug activity. She also told Peek that she had grown afraid of Cislo during the time he lived with her. She requested that Peek come to her residence and search Cislo's belongings for the guns.

2

Approximately 45 minutes later, Peek, and Adult Probation and Parole Officers John Frost, Brad Pinnick, and Joseph Dompier arrived at Johnson's mobile home on Attica Street North. Neither Cislo nor Brown was present. Johnson showed the officers to a bedroom in her mobile home. She told them that Cislo shared the room with Brown and had lived in it off and on for approximately 5 weeks. Johnson told Peek that she had kicked Cislo out of the house the previous night and he was not allowed to return.

During their search of the bedroom, the officers discovered two handguns, a Taurus .45 pistol and a Hi-Point 9 mm pistol, under the bed mattress. They also found Cislo's wallet. They contacted ATF Task Force Officer Stephen Feuerstein and requested that he come to the trailer and take possession of the guns. The officers continued to search the bedroom and found a Sentry handgun safe. When Officer Feuerstein arrived, he opened the safe and discovered a Derringer pocket pistol.

After collecting the firearms and ammunition, Officer Feuerstein spoke with Johnson. He wanted to reiterate that Johnson had observed Cislo with three firearms and obtain a statement about how she knew Cislo had the firearms and that the room was occupied by Cislo and Brown. She identified the three guns in Feuerstein's possession as those that Cislo had shown her previously. She also

confirmed that she had provided consent to the probation officers to search her home.

## II. Discussion

### A. As an adult, Brown had a reasonable expectation of privacy in her bedroom.

Because the Fourth Amendment protects "people not places," *Katz v. United States*, 389 U.S. 347, 351 (1967), Brown must first demonstrate that she personally had a "legitimate expectation of privacy" in the bedroom. The government concedes this element, (doc. 53 at 8), so the Court next turns to whether the search was lawful. *See United States v. Singleton,* 987 F.2d 1444, 1449 (9th Cir. 1993) (the demonstration of a legitimate expectation of privacy "is a threshold standing requirement, and analysis cannot proceed further without its establishment.")

#### 1. Consent to search Brown's bedroom

Having conceded that Brown had a legitimate expectation of privacy in her bedroom, the Court must determine whether Johnson had authority to consent to the search. "A warrantless entry into a home violates the Fourth Amendment unless an exception to the Fourth Amendment warrant requirement applies, such as emergency, exigency, or consent." *Espinosa v. City & County of San Francisco,* 598 F.3d 528, 533 (9th Cir. 2010). Although "consent is a recognized exception to the Fourth Amendment's protection," *United States v. Russell,* 664 F.3d 1279, 1281 (9th Cir. 2012), the government has the burden of establishing the

4

effectiveness of a third party's consent to a search of a defendant's property. *Welch*, 4 F.3d at 764. To meet its burden, the government must demonstrate that Johnson had either actual or apparent authority to consent to the search. "The existence of consent to a search is not lightly to be inferred . . . ." *United States v. Reid*, 226 F.3d 1020, 1025 (9th Cir. 2000).

### a. Actual Authority

A third party has actual or express authority to consent to a search if the third party has "shared use and joint access to or control over a searched area" or "the owner of the property to be searched has expressly authorized a third party to give consent to the search." *Welch*, 4 F.3d at 764. Because there is nothing in the record to suggest that Johnson had express authorization from Brown to consent to the search of Brown's bedroom, the government relies on a mutual use and joint access theory to demonstrate actual authority.

The government argues that as owner and occupant of the house, Johnson's consent to search was valid for anywhere on the premises, including Brown's bedroom. (Doc. 53 at 9-10). But simply owning and occupying a home does not mean the homeowner has actual authority to consent to the search of rooms occupied by others. *See Minnesota v. Olson*, 495 U.S. 91, 98 (explaining "guests [] are entitled to a legitimate expectation of privacy despite the fact that they have no legal interest in the premises and do not have the legal authority to determine

5

who may or may not enter the household."); *see also United States v. Matlock*, 415 U.S. 164, 171 n.7 (1974) (finding that actual authority requires "*mutual use* of the property by persons generally having joint access or control for most purposes so that it is reasonable to recognize that any of the co-inhabitants has the right to permit inspection"). So, in order for Johnson to have had actual authority to consent to search Brown's bedroom, the evidence must show that Johnson had mutual use of and control over Brown's bedroom. No such evidence is before the Court.

Relying on *United States v. Rith*, 164 F.3d 1323, 1330 (10th Cir. 1999), the government argues that Johnson's control over the home can be presumed because of Johnson's "parent-child" relationship with Brown. In *Rith*, the Tenth Circuit addressed whether parents had actual authority to consent to a search of their eighteen-year old son's bedroom. *Id.* Concerned their son was involved in a gang, Rith's parents requested the police check their home for guns and determine if they were stolen. *Id.* at 1326. On appeal, Rith argued that evidence seized during the search should have been suppressed because he revoked his parents' consent to search and the evidence failed to show his parents had authority to consent to a search of his bedroom. *Id.* The court concluded Rith's parents had control for most purposes of the property, stating:

> "Rith lived with his parents and was not paying rent. Although Rith was eighteen years old, these facts raise a presumption of control for

6

> most purposes by Rith's parents over the entire home and thus they could have accessed Rith's room without his consent. There is no evidence to rebut this presumption: no lock on Rith's bedroom door; no agreement with Rith's parents that they not enter his room without his consent; no payment of rent."

*Id.* at 1331. As a result, the court held Rith's parents had actual authority to consent to the search of their son's bedroom. *Id.*

Under different facts, the D.C. Circuit reached the opposite result on the same question about parental control. In *United States v. Whitfield*, 939 F.2d 1071 (D.C. Cir. 1991), FBI agents investigating a bank robbery sought a mother's permission to search her 29 year old son's bedroom in the family home. *Id.* at 1072-73. The agents asked the defendant's mother if the defendant paid rent, and although her response was disputed, the district court found that some form of a landlord-tenant relationship existed between the mother and son. *Id.* at 1072. The agents also asked the mother if the son's bedroom was locked. *Id.* at 1073. When she responded that the room was not locked, the agents took this to be a sign of joint access. *Id.* Reversing the district court's ruling that mother had actual authority to consent to the search, the D.C. Circuit held that the mother had not told the agents enough about her use of the son's room for them reasonably to believe she had common authority. *Id.* The court pointed out that the agents had no way of knowing whether parents allow exclusive use of the rooms they occupy

7

with children that are older adults and the agents made no effort to find out. *Id.*
Specifically, the court held:

> [T]he government's burden to establish that a third party had authority to consent to a search ... cannot be met if agents, faced with an ambiguous situation, nevertheless proceed without making further inquiry. If the agents do not learn enough, if the circumstances make it unclear whether the property about to be searched is subject to "mutual use" by the person giving consent, "then warrantless entry is unlawful *without further inquiry.*"

*Id.* at 1075 (quoting *Illinois v. Rodriguez*, 497 U.S. 177, 188-89 (1990) (emphasis in original ).

In light of the evidence before this Court, this case is much more similar to *Whitfield* than to *Rith*. Notably, Brown was 39 years old at the time of the search in question. Unlike Rith, a recently emancipated 18 year old still living with his parents, Brown, like the defendant in *Whitfield,* had been an adult for many years when the search occurred. This court is less persuaded by the presumption of control given to parents in *Rith* when the child at issue has been an adult for over two decades.

Further, like the agents in *Whitfield*, law enforcement in this case did not acquire enough details about Johnson's joint use and control of Brown's bedroom to establish Johnson's actual authority. Despite being told by Johnson that Brown, Johnson's 39 year old daughter, had shared the bedroom with her boyfriend for at least five weeks, law enforcement did not question Johnson about her mutual use

8

of the room. Law enforcement did not ask Johnson if she stored anything in the room, or if she otherwise could go in and out of the room as she pleased, or if Brown paid rent. Law enforcement did not ask Johnson if she had any type of agreement with her 39 year old daughter about whether she could enter Brown's room without her consent. Law enforcement made no inquiry about whether Johnson had mutual use of the room. Based on these facts they knew at the time, "the agents could not reasonably have believed [Johnson] had authority to consent to this search." *United States v. Whitfield*, 939 F.2d 1071, 1074 (D.C. Cir. 1991).

### b. Apparent Authority

If the government cannot present proof of a party's "actual authority," the government "may establish consent by means of the 'apparent authority doctrine.'" *Id.* Under the apparent authority doctrine, a warrantless search of another's property is valid only if "the facts available to the officer at the moment [would] warrant a man of reasonable caution in the belief that the consenting party had authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990)

The police may rely on a third-party's demonstration of apparent authority to consent to a search, even when that party lacks common authority over the item or place being searched. *See Rakas v. Illinois*, 439 U.S. 128 (1978). Under the apparent authority doctrine, a search is valid if the government proves that the officers who conducted it reasonably believed that the person from whom they

9

obtained consent had the actual authority to grant consent. *United States v. Welch*, 4 F.3d 761, 764 (9th Cir.1993). The government contends that the officers reasonably believed that Johnson had authority to consent to the search of the entire house.

As discussed above, however, the information known to the officers at the time does not suggest that Johnson had "mutual use of the" Brown's bedroom area or "joint access or control for most purposes." *United States v. Dearing*, 9 F.3d 1428, 1429 (9th Cir.1993). Johnson told the officers that Cislo and Brown had been living in the room for about a month, Johnson did not go in to the room without knocking, she referred to the room as "his," meaning Cislo's, she did not go in the bedroom for joint activities and she did not keep any belongings in the room. There is no evidence before the Court that would have led the officers to reasonably believe that Johnson had mutual use of the bedroom to find apparent authority.

### 2. Reasonable suspicion to search based on Cislo's status

Alternatively, the government argues that because Cislo was on probation, Johnson's consent combined with her report on Cislo's criminal activity provided law enforcement with sufficient reasonable suspicion to search the bedroom. The government points the Court to *United States v. Bolivar*, 670 F.3d 1091, 1096 (9th Cir. 2012), for the rule that once police officers properly enter a residence pursuant

10

to a probation search, they only need a "reasonable suspicion" to conclude that the probationer owns, controls, or possesses a particular item within the probationer's residence in order to search the item." Johnson told Officer Peek that she had kicked Cislo out of the residence the night before, however. After that, Peek did not have reasonable suspicion, let alone probable cause, to believe that Cislo resided at the residence. *See Motley v. Parks*, 432 F.3d 1072, 1080 (9th Cir. 2005) (requiring officers to have probable cause to believe that a parolee resides at a particular address). Without Cislo's status as a probationer to provide grounds for the search, the search as to Brown was unlawful.

## III. Conclusion

The Court finds that an objectively reasonable police officer would not have believed that Brown consented to the entry of her bedroom, or that Johnson had authority to consent to the search. Moreover, Johnson plainly told law enforcement that Cislo no longer lived at the residence, so no probation search was warranted. For the foregoing reasons, Brown's Motion to Suppress is GRANTED.

DATED this 4th day of June, 2015.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge